**In re RUSSMAN'S, INCORPORATED, Debtor.**

**Bankruptcy No. 3–89–02788.**

United States Bankruptcy Court, E.D. Tennessee.

March 27, 1991.

---

Hodges, Doughty & Carson, Dean B. Farmer, Deanna J. Daugherty, Knoxville, Tenn., for Trustee.

Brendan Bradley, Nashville, Tenn., for Com'r of Revenue of the State of Tenn.

### MEMORANDUM ON TRUSTEE'S MOTION TO ALLOW CHAPTER 11 ADMINISTRATIVE EXPENSE CLAIM AND RELEASE OF FUNDS TO THE ESTATE

RICHARD S. STAIR, Jr., Bankruptcy Judge.

■ The court is called upon to determine the status of a claim filed January 25, 1990, by the Commissioner of Revenue for the State of Tennessee (the State) in the amount of $37,893. The Chapter 7 trustee, Dean B. Farmer, contends that the State's claim for unpaid sales taxes incurred during the debtor's aborted Chapter 11 case should be allowed as an administrative expense pursuant to 11 U.S.C.A. § 503(b)(1)(B)(i) (West Supp.1990). If allowed as requested by the trustee, the State's claim, subject to the subordination provisions contained in 11 U.S.C.A. § 726(b) (West Supp.1990),[1] will be entitled to a priority of payment under 11 U.S.C.A. § 507(a)(1) (West 1979 & Supp.1990). Notwithstanding that it labeled its proof of claim as an "Administrative Expense," the State contends that the sales taxes it seeks to recover are trust fund taxes; that certain funds segregated by the trustee and deposited in a tax escrow account are not property of the estate; and that its claim is entitled to payment in its entirety ahead of Chapter 11 administrative expenses.[2]

This is a core proceeding. 28 U.S.C.A. § 157(b)(2)(A) and (B) (West Supp.1990).

I

The parties, through written stipulations filed January 2, February 21, and March 11, 1991, stipulate the following material facts:[3]

1. The debtor filed its voluntary petition under Chapter 11 on September 28, 1989. An order approving the appointment by the United States Trustee of Dean B. Farmer as trustee in the Chapter 11 case was entered on November 9, 1989.

2. On December 6, 1989, the Chapter 11 case was converted to Chapter 7.[4] Dean B. Farmer has continued to serve as trustee in the Chapter 7 case.

3. From November 1 through December 6, 1989, the debtor and trustee incurred a sales tax liability to the State incidental to the operation of the debtor's retail con-

---

1. Bankruptcy Code § 726(b) provides for payment of administrative expenses associated with a Chapter 7 case ahead of administrative expenses associated with a converted Chapter 11, 12, or 13 case. Thus, in the instant case, payment of administrative expense claims allowed in the Chapter 11 case will be subordinated to payment of Chapter 7 administrative expense claims. The trustee does not have sufficient funds to pay Chapter 11 administrative expenses in full.

2. If the State is correct in its contention that all or a portion of the sales taxes collected by the debtor and trustee are not property of the estate, it will also be entitled to payment of its claim ahead of Chapter 7 administrative expenses.

3. Stipulations essential to a resolution of the issues before the court are synopsized rather than quoted verbatim.

4. The parties incorrectly stipulate the conversion date as December 7, 1989.

venience store business in the amount of $17,166. An additional sales tax liability was incurred for the month of October, 1989, in the amount of $19,217. These taxes, totalling $36,383, were, as required by Tennessee law, collected by the debtor and trustee from the debtor's customers at the time of sale. Penalties and interest in the amount of $1,093 accrued on these unpaid taxes to the December 6, 1989 conversion date.

4. All sales tax receipts collected by the debtor and trustee were deposited to a general operating account where they were commingled with other funds received from the operation of the debtor's business. Between November 9 and December 7, 1989, the trustee segregated the sum of $23,657.62 out of the operating account into an interest-bearing checking account in the name of "Dean B. Farmer, Trustee for Russman's, Inc., Tax Escrow" (Tax Escrow Account). On December 6, 1989, the date the case was converted to Chapter 7, the sum of $10,356.93 remained on deposit in the operating account.

5. Sales taxes owed the State from sales during November, 1989, were due December 1, 1989, and payable without penalty on or before December 20, 1989. Sales taxes owed the State from sales for December, 1989, were due January 1, 1990, and payable without penalty on or before January 20, 1990. The debtor and trustee did not pay the taxes.

6. Through telephone conversations and correspondence on January 10 and 31, 1990, the trustee informed the State that the debtor owed certain sales taxes and that approximately $23,000 had been segregated into a separate account.

7. On January 25, 1990, the State filed a proof of claim, designated Claim No. 49, in the amount of $37,893. This claim has two components: (1) the sales tax liability incurred by the debtor and trustee from October 1 through December 6, 1989, in the amount of $36,383, plus penalties and interest totalling $1,093; and (2) a franchise tax liability in the amount of $417.[5]

8. Tennessee law does not require that collected sales taxes be segregated or designated as tax funds. No order has been entered in this case requiring the debtor or trustee to segregate sales taxes.

On November 1, 1990, the trustee filed a "Motion To Allow Chapter 11 Administrative Claim And Release Of Funds To The Estate" (Motion). By this Motion, the trustee requests that the State's claim in the amount of $37,893[6] be allowed as an administrative expense in the debtor's Chapter 11 case, and that the $23,657.62 deposited in the Tax Escrow Account be paid into the general fund of the estate for the benefit of all creditors.

## II

Tennessee imposes a sales tax on the "privilege" of engaging "in the business of selling tangible personal property at retail...." Tenn.Code Ann. §§ 67–6–201 and 202 (1989). At the same time, Tennessee law provides that retail sales taxes "shall be collected by the retailer from the consumer insofar as it can be done." Tenn. Code Ann. § 67–6–502 (1989). The Tennessee Court of Appeals has stated that "the legislature has mandated that the seller shall ... collect the tax from the buyer" and that "the burden for the payment of the tax is meant to be that of the buyer." *Sam Carey Lumber Co. v. Sixty–One Cabinet Shop, Inc.*, 773 S.W.2d 252, 255 (Tenn. App.1989), *permission to appeal denied.*

Bankruptcy Judge William H. Brown, in a discussion of the Tennessee retail sales tax law within the context of dischargeability under 11 U.S.C.A. § 523(a)(1) and § 507(a)(7)(C) (West 1979 & Supp.1990), recently stated:

[U]nder Tennessee law, it is clear that sales tax is a tax to be collected from a third party for which the third party is ultimately liable, to be subsequently paid over to the taxing authorities. Accord-

---

**5.** The parties do not dispute that the State's franchise tax claim is entitled to administrative expense status in the Chapter 11 case.

**6.** The trustee mistakenly refers to the State's claim in his Motion as "in the amount of $27,893.00."

ingly, notwithstanding the fact that retailers ... are in the first instance liable for payment of the sales tax to the state, they are responsible for collecting it from the consumer and holding it in trust for the state; thus, sales tax in Tennessee qualifies for bankruptcy purposes as a "trust fund" tax.

This conclusion is in harmony with the weight of authority in the bankruptcy context which establishes that notwithstanding "labeling" by state statutes, sales taxes are generally taxes which are collected from third parties and subsequently remitted to the taxing authority. They are essentially "held in trust" by the retailer for the taxing authority....

*King v. Tennessee Department of Revenue (In re King)*, 117 B.R. 339, 341 (Bankr. W.D.Tenn.1990) (citations omitted). Based on this analysis, Judge Brown concluded that "retail sales taxes in Tennessee qualify as 'trust fund taxes.'" *Id.* at 342.

■ This court agrees with and has followed Judge Brown's ruling in *King. Kuykendall v. State of Tennessee Department of Revenue (In re Kuykendall)*, Adv. Proc. No. 90–3128, slip op. (Bankr.E.D. Tenn. Jan. 8, 1991). Accordingly, sales taxes collected by the debtor and trustee during the pendency of the debtor's Chapter 11 case constitute trust fund taxes.

The United States Supreme Court recently held that a debtor's prepetition payments of trust fund taxes to the Internal Revenue Service (IRS)[7] from its general accounts were not transfers of "property of the debtor" under 11 U.S.C.A. § 547(b) (West 1979), but were transfers of funds held in trust, and, accordingly, could not be avoided as preferences. *Begier v. Internal Revenue Service,* — U.S. —, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990).[8] Consideration of the facts giving rise to the Court's decision in *Begier* is important to a resolution of the

contested matter presently before the court.

The debtor, American International Airways, Inc. (AIA), had fallen behind in payments of its federal income, FICA, and excise taxes to the IRS. The IRS ordered the debtor to deposit all trust fund taxes it collected thereafter into a separate bank account. The debtor established the account but did not deposit sufficient funds to cover the entire amount of its trust fund obligations. It nonetheless remained current on these obligations by making up the deficiency from its general operating account. AIA commenced a case under Chapter 11, which was subsequently converted to Chapter 7. The Chapter 7 trustee filed a preference action in the bankruptcy court seeking to recover the entire amount the debtor paid the IRS for trust fund taxes within the ninety days preceding the filing of its bankruptcy petition. The bankruptcy court refused to permit the trustee to recover the money paid from the separate account on the theory that the debtor held that money in trust for the IRS. However, it allowed the trustee to avoid most of the payments made out of the debtor's general operating account, holding that "only where a tax trust fund is actually established by the debtor and the taxing authority is able to trace funds segregated by the debtor in a trust account established for the purpose of paying the taxes in question would we conclude that such funds are not property of the debtor's estate." *Begier v. United States (In re American International Airways, Inc.)*, 83 B.R. 324, 329 (Bankr.E.D.Pa.1988). The district court affirmed. On appeal, the Third Circuit reversed, holding that the prepetition payments of nonsegregated funds to the IRS by the debtor were payments from a special fund in trust for the government and, therefore, not recoverable

---

**7.** The Internal Revenue Code requires employers to withhold income and FICA (Social Security) taxes from the wages of their employees. 26 U.S.C.A. §§ 3102(a) and 3402(a) (West 1989). These taxes are required to be held by the employer in "a special fund in trust for the United States," 26 U.S.C.A. § 7501(a) (West 1989), and are referred to as "trust fund" taxes. *Slodov v.*

*United States,* 436 U.S. 238, 98 S.Ct. 1778, 56 L.Ed.2d 251 (1978).

**8.** *Begier* was governed by § 547(b) as enacted prior to the 1984 amendments. The phrase "property of the debtor" has been replaced in § 547(b) by substitution of the phrase "an interest of the debtor in property."

as preferential transfers of the debtor's property. *Begier v. United States*, 878 F.2d 762 (3d Cir.1989).

The Supreme Court affirmed, holding that the debtor's payments of trust fund taxes to the IRS from its general operating account were not transfers of "property of the debtor" under former § 547(b), but were transfers of funds held in trust for the IRS. The Court first determined that the phrase "property of the debtor," although not defined in the Code, was analogous to the term "property of the estate" as used in § 541 and did not include an interest a debtor had in property it held in trust for another. The Court stated in material part:

> [Section] 541 guides our analysis of what property is "property of the debtor" for purposes of § 547(b). Among the changes [to § 547(b) in the 1984 Amendments] was the substitution of "an interest of the debtor in property" for "property of the debtor." Section 547(b) thus now mirrors § 541's definition of "property of the estate" as certain "interests of the debtor in property." ... We therefore read both the older language ("property of the debtor") and the current language ("an interest of the debtor in property") as coextensive with "interests of the debtor in property" as that term is used in § 541(a)(1).[9]

110 S.Ct. at 2263 n. 3 (citations omitted).

The Court further found that 26 U.S.C.A. § 7501(a) (West 1989), the IRS trust fund tax provision, did not require the debtor to segregate the amounts destined for trust fund tax purposes in a separate account as a prerequisite to the creation of the trust, but that a trust was created in favor of the IRS at the time these monies were collected or withheld. Finally, the Court determined that the assets actually used by the debtor to pay the IRS belonged to the trust. Relying on legislative history, the Court noted that both the House and Senate had demonstrated an interest not to treat trust fund taxes as property of the debtor. However, when commingled with other funds of the debtor, the Court observed that "Congress expected that the IRS would have to show *some* connection between the § 7501 trust and the assets sought to be applied to a debtor's trust-fund tax obligation." 110 S.Ct. at 2266 (emphasis in original).

*Begier's* significance is two-fold. In the first place, the Court holds that there is no requirement that withheld or collected taxes be segregated in order that they retain their classification as trust fund taxes. 110 S.Ct. at 2264. Secondly, the Court concludes that there must be some nexus between the trust and the assets sought to be applied to a debtor's trust fund tax obligations. *Id.* at 2266–67 (citing *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205 n. 10, 103 S.Ct. 2309, 2314 n. 10, 76 L.Ed.2d 515 (1983) (IRS cannot exclude funds from the estate if it cannot trace them to § 7501 trust property)).

With regard to the nexus or tracing requirement, the Court stated in material part:

> The debtor's act of voluntarily paying its trust-fund tax obligation therefore is alone sufficient to establish the required nexus between the "amount" held in trust and the funds paid.
>
> In the absence of any suggestion in the Bankruptcy Code about what tracing rules to apply, we are relegated to the legislative history. The courts are directed to apply "reasonable assumptions" to govern the tracing of funds, and the House Report identifies one such assumption to be that any voluntary prepetition payment of trust-fund taxes out of the debtor's assets is not a transfer of the debtor's property.

110 S.Ct. at 2267.

■ *Begier* involved trust fund taxes withheld and collected by the debtor which

---

9. Section 541(a)(1) provides:

> (a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

> (1) Except as provided in subsections (b) and (c)(2) of this section, all legal and equitable *interests of the debtor in property* as of the commencement of the case.

11 U.S.C.A. § 541(a)(1) (West 1979 & Supp. 1990) (emphasis added).

were paid to the IRS prepetition. The present case involves trust fund sales taxes collected by the debtor and trustee while operating the debtor's business under Chapter 11, but which were not paid to the State. The collected taxes were originally deposited to a general operating account. Thereafter, the trustee segregated and deposited the sum of $23,657.62 to a Tax Escrow Account. This court, on the strength of *Begier,* has no reservation in concluding that the trustee's voluntary segregation of trust fund retail sales taxes out of the general operating account serves to establish the required nexus between the amount held in trust and the funds paid. In effect, the trustee established a separate trust fund account into which he deposited the collected sales taxes. Administrative expense claimants in the Chapter 7 case would receive a windfall if the court were to conclude that these segregated trust fund taxes, which were in fact collected by the debtor and trustee from customers, now constitute general assets of the estate. Further, such a ruling would appear to encourage a Chapter 11 debtor's nonpayment of trust fund taxes if it determined the withheld or collected taxes could be more advantageously used to keep the debtor afloat. Unfortunately, this is all too often what occurs.

██ The court, however, also concludes that the State has not established the required nexus with regard to the commingled funds remaining on deposit in the trustee's general operating account at the time of conversion. These funds have not been traced in their entirety to the trust fund taxes collected by the debtor and trustee.

In sum, the court concludes:

1. That the $23,657.62 on deposit in the Tax Escrow Account established by the trustee, together with accrued interest, is held in trust for the benefit of the State.

2. That the trustee will be required to disburse to the State all sums on deposit in the Tax Escrow Account within ten (10) days.

3. That after crediting funds received from the Tax Escrow Account the balance of the State's Claim No. 49 will be allowed as an administrative expense of the Chapter 11 case under 11 U.S.C.A. § 503(b)(1)(B)(i) (West Supp.1990).

4. That within ten (10) days from receipt of the proceeds from the Tax Escrow Account the State will amend Claim No. 49 to reflect the balance due on its administrative expense claim.

This Memorandum constitutes findings of fact and conclusions of law as required by Fed.R.Bankr.P. 7052. An appropriate order will be entered.

### ORDER

In accordance with the "Memorandum On Trustee's Motion To Allow Chapter 11 Administrative Expense Claim And Release Of Funds To The Estate" filed this date, the court directs the following:

1. That the trustee's "Motion To Allow Chapter 11 Administrative Expense Claim And Release Of Funds To The Estate" filed November 1, 1990, is DENIED.

2. That the trustee shall disburse to the Commissioner of Revenue for the State of Tennessee within ten (10) days all funds on deposit in that interest-bearing checking account in the name of "Dean B. Farmer, Trustee for Russman's, Inc., Tax Escrow," consisting of the sum of $23,657.62, plus accrued interest.

3. That the funds received by the Commissioner of Revenue for the State of Tennessee from the trustee in compliance with paragraph 2 above shall be credited to Claim No. 49, filed January 25, 1990, in the amount of $37,893.00. The balance of the State's Claim No. 49 shall be allowed as an administrative expense under the Chapter 11 case. The Commissioner shall file an amended claim within ten (10) days of his receipt of funds from the trustee.

SO ORDERED.