

1994 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-15-1994

# City of Farrell v. Sharon Steel Corp.

Precedential or Non-Precedential:

Docket 94-3130

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1994

## Recommended Citation

"City of Farrell v. Sharon Steel Corp." (1994). *1994 Decisions.* Paper 188.
http://digitalcommons.law.villanova.edu/thirdcircuit_1994/188

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1994 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


No. 94-3130


CITY OF FARRELL,

v.

SHARON STEEL CORPORATION;
UNITED STATES OFFICE;
CREDITORS' COMMITTEE;
MUELLER INDUSTRIES, INC.;
CITIBANK, N.A.

                              The City of Farrell,

                                        Appellant


On Appeal from the United States District Court
   for the Western District of Pennsylvania
            (D.C. Civ. No. 93-0736)


Argued August 30, 1994

BEFORE:  STAPLETON and GREENBERG, Circuit Judges,
         and ATKINS, District Judge*

(Filed:  November 15, 1994)


                    P. Raymond Bartholomew (argued)
                    Cusick, Madden, Joyce
                    & McKay
                    One East State Street
                    P.O Box 91
                    Sharon, PA 16146

                    Attorneys for Appellant

* Honorable C. Clyde Atkins, Senior United States District Judge
for the Southern District of Florida, sitting by designation.

                              Herbert P. Minkel, Jr. (argued)
                              Fried, Frank, Harris, Shriver
                              & Jacobson
                              One New York Plaza
                              New York, NY 10004

                              Attorneys for Appellee
                              Sharon Steel Corporation

                              William H. Schorling (argued)
                              Klett, Lieber, Rooney &
                              Schorling
                              One Oxford Centre
                              40th Floor
                              Pittsburgh, PA 15219-6498

                              Attorneys for Appellee
                              Citibank, N.A.

OPINION OF THE COURT

GREENBERG, Circuit Judge.

I.  INTRODUCTION

        This appeal involves a controversy over City of Farrell municipal income taxes that Sharon Steel Corporation withheld from its employees' wages.  After withholding the amounts in dispute, Sharon Steel filed for protection under Chapter 11 of the Bankruptcy Code and thus did not remit the funds to the city. The City of Farrell subsequently initiated this action in the bankruptcy court to collect the unpaid taxes withheld.  The bankruptcy court and the district court denied the City's request for an order requiring Sharon Steel to remit the withheld funds. We will reverse the district court's order, and we will remand

the case to the district court for the proceedings we outline in this opinion.

## II.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Sharon Steel has its main plant and principal place of business in the City of Farrell, Mercer County, Pennsylvania.  In 1967 the city, pursuant to section 13 of the Pennsylvania Local Tax Enabling Act, as amended, Pa. Stat. Ann. tit. 53, § 6913 (1972), enacted a tax (Ordinance No. 0-17-66) on the earned income and net profits of all residents and non-residents employed or conducting business within the city.  Under the ordinance and Pennsylvania law, Pa. Stat. Ann. tit. 53, § 6913 IV, employers located in the City of Farrell must withhold taxes on locally earned income from the wages of any employee subject to the city income tax and must remit those taxes in quarterly payments to the city.

For the fourth quarter of 1992, Sharon Steel withheld $56,831.99 in City of Farrell income tax.  On November 30, 1992, Sharon Steel filed its petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Western District of Pennsylvania.  After filing its petition, Sharon Steel remitted $7,944.97 in withholding taxes to the City of Farrell, which was the post-petition portion of the fourth-quarter wages it withheld for payment to the City of Farrell. But Sharon Steel retained the remainder of the withheld fourth-quarter taxes.

To obtain the remaining funds, the City of Farrell filed a motion in the bankruptcy court to lift the automatic stay and to compel the turnover of the funds. The bankruptcy court denied the motion in a written opinion dated April 9, 1993, rejecting the city's reliance on Begier v. IRS, 496 U.S. 53, 110 S.Ct. 2258 (1990). In re Sharon Steel Corp., 152 B.R. 450 (Bankr. W.D. Pa. 1993). The city contends that Begier held that a trust is created for the benefit of the taxing authority whenever an employer withholds a portion of an employee's wages as income taxes. Thus, in the city's view, taxes withheld from an employee but not paid to the city do not become "property of the estate" when the employer files for bankruptcy even if the employer had not segregated the "trust" funds from its other assets. But the bankruptcy court distinguished Begier, primarily because Begier requires that the taxing authority show "some nexus between the trust and the assets sought to be applied to the debtor's trust fund tax obligations" and, in the court's view, the city could not "establish the required nexus with regard to the commingled funds in [Sharon Steel's] possession." Id. at 451-52. In other words, unlike in Begier, where the debtor had paid the taxes withheld to the Internal Revenue Service prior to filing its bankruptcy petition, thereby creating a segregated fund, Sharon Steel commingled the funds with its other assets and the funds remained commingled when Sharon Steel filed its Chapter 11 petition.

The city appealed but the district court affirmed the bankruptcy court's decision in a written opinion, agreeing with

the bankruptcy court that "the facts of this case are distinguishable from [those in] Begier" and that the City "has failed to demonstrate the required nexus between the taxes and the commingled funds in the possession of the estate of Sharon Steel."  In re Sharon Steel Corp., Civ. No. 93-0736, at 3-4 (W.D. Pa. Feb. 11, 1994).  The district court also distinguished Begier on the basis that the statutory "language establishing a 'trust fund' in the withheld taxes in Begier is absent in the pertinent statute and ordinance governing withholding taxes for Farrell." Id.  The district court entered its order on February 14, 1994, affirming the bankruptcy court's order.  The city has appealed to us from that order.

The bankruptcy court had subject matter jurisdiction under 28 U.S.C. § 157(b) and 11 U.S.C. § 362(d) as the City of Farrell filed a motion to lift the automatic stay and compel turnover of the trust fund taxes.  The district court had appellate jurisdiction under 28 U.S.C. § 158(a) over the bankruptcy court's denial of the City's motion, as the bankruptcy court's order denying the city relief was final.  We have jurisdiction under 28 U.S.C. § 158(d) over the district court's final order affirming the bankruptcy court's order.

III.  DISCUSSION

a.  Introduction

The crux of this appeal is whether the remaining portion of the funds Sharon Steel withheld from its employees' wages for the fourth quarter of 1992 constitutes property of its

bankruptcy estate or whether it is excluded from the estate by 11 U.S.C. § 541(d), which excludes equitable interests of third parties from a bankrupt's estate.[1]  If the funds are property of the estate, then the bankruptcy court and district court correctly rejected the city's claim; but if the funds are not property of the estate, they should be paid to the city unless, as we discuss below, Sharon Steel's pre-petition lenders have a prior claim to the funds.  The City of Farrell primarily contends that because Sharon Steel retained the funds withheld in trust for the city, the funds are not property of the estate, and that therefore we should reverse the district court's order.  In considering this appeal we are exercising plenary review because both the bankruptcy court and the district court decided the case as a matter of law on facts which so far as considered by those courts were not disputed.  In re Brown, 851 F.2d 81, 84 (3d Cir. 1988).

---

[1].  11 U.S.C. § 541(a)(1) provides that the property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case."  Section 541(d) provides the following exception:

> Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest . . . becomes property of the estate under subsection (a)(1) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

We start from the well-settled principle that debtors do "not own an equitable interest in property . . . [they] hold[ ] in trust for another," and that therefore funds held in trust are not "property of the estate."[2]  Begier, 496 U.S. at 59, 110 S.Ct. at 2263; see also 11 U.S.C. § 541(d); Universal Bonding Ins. Co. v. Gittens & Sprinkle Enters., 960 F.2d 366, 371 (3d Cir. 1992).  In general, "to establish rights as a trust recipient, a claimant must make two showings: (1) demonstrate that the trust relationship and its legal source exist, and (2) identify and trace the trust funds if they are commingled." Goldberg v. New Jersey Lawyers' Fund, 932 F.2d 273, 280 (3d Cir. 1991); In re Columbia Gas Sys. Inc., 997 F.2d 1039, 1063 (3d Cir. 1993) ("beneficiaries of trust funds bear the burden of identifying and tracing their trust property"), cert. denied, 114 S.Ct. 1050 (1994).  Goldberg teaches that we look to state law to determine whether the claimant has shown a trust relationship,[3] but that we look to federal law to determine whether the claimant

---

[2].  The "classic definition of a trust . . . [is that] the beneficiary has an equitable interest in the trust property while legal title is vested in the trustee."  In re Columbia Gas Sys. Inc., 997 F.2d 1039, 1059 (3d Cir. 1993), cert. denied, 114 S.Ct. 1050 (1994).

[3].  See Butner v. United States, 440 U.S. 48, 54, 99 S.Ct. 914, 918 (1979) ("Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law."); see also In re Nejberger, 934 F.2d 1300, 1302 (3d Cir. 1991) ("Although section 541 defines property of the estate, we must look to state law to determine if a property right exists and to stake out its dimensions.").

has traced and identified the trust funds.[4]  Goldberg, 932 F.2d at 280; see also Universal Bonding, 960 F.2d at 369; In re Markos Gurnee Partnership, 163 B.R. 124, 129 & n.4 (Bankr. N.D. Ill. 1993); In re Visiting Nurse Ass'n v. Bowen, 143 B.R. 633, 641 (W.D. Pa. 1992) ("Once a bankruptcy court makes a determination concerning whether a debtor has any legal or equitable interest in property based upon applicable state law, whether the property will come into the estate is a federal question.") (internal quotations and citations omitted)), aff'd, 986 F.2d 1410 (3d Cir. 1993) (table).

In considering this case we naturally focus first on Begier.  In Begier, the trustee filed an adversary proceeding against the United States, claiming that the debtor's pre-petition payment of withheld federal income tax to the Internal Revenue Service was a voidable preference under 11 U.S.C. § 547(b).  The Supreme Court rejected the trustee's position, holding that the payment of the taxes to the IRS was not a voidable preference because the funds transferred were not property of the debtor, but rather were held in trust for the government.  Begier, 496 U.S. at 66-67, 110 S.Ct. at 2267.  In finding that a trust existed, the Court relied on a section of the Internal Revenue Code, which provided that persons

---

[4].  Begier is not inconsistent with Goldberg's approach.  In Begier, the Court solely confronted federal issues, so it naturally looked to federal law to determine whether the claimant proved a trust relationship.  Additionally, the Court looked to federal law to determine whether the claimant identified and traced the trust funds.

withholding taxes hold the withheld funds in trust for the IRS.[5] The Court also found that the debtor's pre-petition payments of withholding amounts to the IRS constituted a sufficient enough nexus to take the funds out of the bankruptcy estate.

The city contends that Begier mandates that we reverse the district and bankruptcy courts' orders denying the city's motion to lift the automatic stay and compel turnover of the remaining funds withheld. The district court found two independent reasons for denying the city's motion: (1) the city failed to show that a statutory trust had been created; and (2) the city failed to show the appropriate "nexus" between the debtor's assets and the withholding funds. Sharon Steel and Citibank, as agent for certain of Sharon Steel's creditors, contend that the district court correctly held that Begier is distinguishable and that therefore we should affirm its order affirming the bankruptcy court. Accordingly, we will discuss the district court's two reasons for denying the City's motion.

b.  Was a trust created in the taxes withheld?

The district court concluded that while there is no "statutory authority . . . [for] Farrell's contention that these taxes are held in trust," the statute involved in Begier, 26 U.S.C. § 7501, "expressly designates that taxes withheld by an

---

[5]. The Court quoted:  "'Whenever any person is required to collect or withhold any internal revenue tax from any other person and to pay over such tax to the United States, the amount of tax so collected or withheld shall be held to be a special fund in trust for the United States.'"  496 U.S. at 60, 110 S.Ct. at 2263 (quoting 26 U.S.C. § 7501).

employer are held in trust for the United States."  In re Sharon Steel Corp., Civ. No. 93-0736, at 3-4.  In response, the city argues that Pennsylvania law demonstrates that Sharon Steel did hold the taxes in trust for the city.  See City of Philadelphia v. Penn Plastering Corp., 253 A.2d 247 (Pa. 1969), and City of Philadelphia v. B. Axe Co., 397 A.2d 51 (Pa. Commw. Ct. 1979).  We are satisfied that in determining whether a trust has been created we look to the entire body of germane state law, including the relevant case law, and that we should not be confined solely by the applicable authorizing statute.  See, e.g., Goldberg, 932 F.2d at 280; In re Markos Gurnee, 163 B.R. at 129; In re Visiting Nurse Ass'n, 143 B.R. at 641-42; In re King, 117 B.R. 339, 341 (Bankr. W.D. Tenn. 1990).

We find that under Pennsylvania case law, when Sharon Steel withheld the city income taxes a trust was created so that Sharon Steel held the funds in trust for the city.  Penn Plaster is instructive in this regard.  That case involved a suit by the City of Philadelphia against a corporation doing business in Philadelphia and its president to collect wage taxes withheld by the corporation.  As the corporation's president filed "preliminary objections in the nature of a demurrer," the court accepted Philadelphia's averments as true, finding that "the taxes were collected by the corporation as agent for [Philadelphia] and that [the president as] the active and controlling officer . . . failed to pay the taxes so collected over to the City."  Penn Plaster, 253 A.2d at 248-49. Philadelphia argued that when the corporation withheld the city

income tax, the corporation and its president as its controlling officer and director became "trustees of those wage taxes" and had "a duty to pay those funds over to [Philadelphia]." Id. at 248. The Pennsylvania Supreme Court agreed, holding that "[o]ne who collects taxes as agent for a city and fails to pay the same over to the city has long been held to be a trustee ex maleficio." Id. at 249 (citing City of Philadelphia v. Heinel Motors, Inc., 16 A.2d 761 (Pa. Super. Ct. 1940)); see also City of Philadelphia v. B. Axe Co., 397 A.2d 51.

Penn Plaster's reference to the principle that the party who "collects taxes as agent for a city and fails to pay the same over to the city [is] . . . a trustee ex maleficio[,]" does not somehow undermine our conclusion that when Sharon Steel withheld the City of Farrell income tax, a trust was created. Rather, the reference supports our result. After all, the principle that Penn Plaster's reasoning recognized was premised on the concept that a trust was created when the corporation withheld the income taxes. The court stated that it is undisputed "that corporations must act through individuals and where the individuals are the active and controlling officers and agents of the corporation and they fail to administer the trust responsibilities of the corporation, those responsibilities are imposed upon the individuals who are responsible for the performance of the trust duty." Penn Plaster, 253 A.2d at 125 (emphasis added). Therefore, Penn Plaster clearly contemplated that when a corporation withholds municipal income taxes, Pennsylvania law imposes a "trust responsibility" and thus the

corporation retains the funds withheld as trustee for the municipality.

Heinel Motors, cited in Penn Plaster, supports our conclusion that, under Pennsylvania law, a trust is created when an employer withholds city income taxes. Heinel Motors involved the question of whether a trust is created when a vendor collects sales tax from a purchaser of goods subject to the tax. In making its analysis, the Heinel court extensively considered precedent regarding the creation of trusts and concluded that the "receipt of the tax money by the vendor operates to create a constructive trust." Heinel Motors, 16 A.2d at 765. The court reasoned, in part, that as the sales tax was imposed on the purchaser and not on the vendor, the vendor collected the tax as trustee for the state. Indeed, the court recognized the broad principle that "[e]very person who receives money to be paid to another or to be applied to a particular purpose is a trustee[.]" Id. (citations and internal quotations omitted). Clearly, therefore, the tax in Heinel Motors is similar to the withholding tax at issue here, as in both instances the entity holding the tax funds is not responsible for the burden of the tax but only is responsible for collecting it. See also In re King, 117 B.R. at 341.

We acknowledge that sales taxes are paid to the vendor by a third party but when income tax is involved the employer had possession of the funds it withholds prior to paying wages to the employee. However, this distinction does not affect our result. In substance, when the employer pays wages and withholds taxes it

is paying the employees' taxes to itself since the employee has earned his or her entire gross wages. Indeed, the only reason that the employer need not pay the funds withheld to the employee is that the applicable law requires the employer to withhold the wages for application on the employee's tax obligations. Thus, it would be artificial to characterize the withholding tax situation as simply creating a debtor-creditor relationship between the employer and the city. The real debt is the employees' tax liability to the city and the employer is merely the conduit for its employees' tax payments. Consequently, we hold that under Pennsylvania law Sharon Steel held the withholding taxes in trust for the City of Farrell.[6]

---

[6]. In re Markos Gurnee, 163 B.R. 124, does not conflict with our conclusion. There, the Illinois Department of Revenue claimed that it had a trust-fund interest in the debtor's general assets to the extent of unpaid hotel occupation and use taxes. Markos Gurnee, 163 B.R. at 127. The court held against the state, reasoning that the statutes creating the hotel occupation and use taxes did not "create a trust in favor of the state." Id. at 130.

But as the Markos Gurnee court recognized, the hotel occupation and use taxes differed from the type of trust-fund taxes involved in Begier. The Markos Gurnee court stated that the "theory of 'trust fund taxes' (like income tax withholding) is that the tax is imposed on one party (for example, an employee), but is collected and held by another party (for example, the employer)." Id. The court held that this theory was inapplicable to the occupation tax "since the tax is imposed directly on hotel operators, not their customers." Id. As to the use tax, the court held that the statute's plain language shows that state is a creditor and "not in the position of a" beneficiary. Id. at 131-32. Thus, Markos Gurnee is distinguishable from this case, because the occupation tax is a direct tax on the hotel while the City of Farrell income tax is a direct tax on the employees and not on Sharon Steel, and because the Illinois use tax statute's plain language merely creates a debtor-creditor relationship between the taxing authority and the party responsible for remitting the taxes.

c. Does the source of the trust distinguish this case from Begier?

We must now decide whether the trust created under Pennsylvania law warrants the same treatment as the trust created under the statute in Begier, 26 U.S.C. § 7501. Section 7501 provides that "[w]henever any person is required to collect or withhold any internal revenue tax from any other person and to pay over such tax to the United States, the amount of tax so collected or withheld shall be held to be a special fund in trust for the United States." According to the Begier Court, this statutory trust extends "only to 'the amount of tax so collected or withheld,'" and that the trust is created "at the moment" the employer paid its employees' wages. Begier, 496 U.S. at 60-61, 110 S.Ct. at 2263-64. Moreover, Begier rejected the argument that segregation of the withheld funds was a prerequisite to the creation of a trust. Id. at 60-61, 110 S.Ct. at 2264.

(..continued)

We also recognize the following additional point. It is conceivable that an employer paying wages might not have the funds to pay the gross wages in full, though it could pay the employees their net wages after withholding. In that event it reasonably could be argued that no trust has been created in the "withheld" taxes as there were no funds to withhold. Clearly, the larger the amount of taxes to be deducted the more plausible would be the argument that a trust had not been created. However, while we recognize the plausibility of this argument, we do not address it because neither Sharon Steel nor Citibank raises it. Furthermore, we doubt that there would be a factual predicate for the argument because the City of Farrell income tax rate was 1% when it was enacted, and we believe it was 1.5% by 1992.

We find no significant distinction between the trust created under section 7501 with respect to federal withholding and the trust created under Pennsylvania law with respect withholding of local income taxes. First, both statutory schemes require that the employer withhold the appropriate portion of income when it pays wages to its employees.[7] Thus, as Pennsylvania case law establishes that a trust is created when the tax is withheld and as section 7501 creates an express trust in funds withheld, it is clear that under both statutory regimes the trust is created when the employer pays the wages.

Second, the Begier Court's primary reason for rejecting the argument that segregation of the withheld funds is a prerequisite to the creation of a trust applies with equal force in this case. Begier stated that requiring segregation as a prerequisite to the creation of the trust would "mean that an employer could avoid the creation of a trust simply by refusing to segregate." 496 U.S. at 61, 110 S.Ct. at 2264. Thus, if we were to hold that a trust was not created under Pennsylvania law because Sharon Steel did not segregate the withholding funds, we would be eviscerating the concept expressed in Penn Plaster that "[o]ne who collects taxes as agent for a city and fails to

_____

[7]. See Begier, 496 U.S. at 60, 110 S.Ct. at 2264 ("Section 3402(a)(1) requires that 'every employer making payments of wages shall deduct and withhold upon such wages [the employee's federal income tax].'") (emphasis added); and see City of Farrell Ordinance No. 0-17-66, § 5(b) ("Every employer having . . . [a] place of business within the City of Farrell . . . shall deduct at the time of payment thereof, the tax imposed by this Ordinance on the earned income due to his employe or employes.").

pay the same over to the city has long been held to be a trustee _ex maleficio_." 253 A.2d at 249. This would occur because, then, an employer could avoid creating a trust simply by commingling the withholding funds with its other assets.

Moreover, we must recognize the city's equitable interest in the funds withheld even though Pennsylvania law and the city ordinance do not create an express trust in the withheld funds. Whatever may be true in other contexts, the distinction between a direct trust (_i.e._ one expressly created by the parties) and a constructive trust (_i.e._ one imposed by law) has no relevance to the issues on this appeal. As we recently stated, "Congress clearly intended the exclusion [of trust funds from the debtor's estate] created by section 541(d) to include not only funds held in express trust, but also funds held in constructive trust." In re Columbia Gas, 997 F.2d at 1059 (citing H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 368 (1977), _reprinted_ _in_ 1978 U.S.C.C.A.N. 5963, 6324).

We are not alone in this approach. The Court of Appeals for the Ninth Circuit, in In re Unicom Computer Corp., 13 F.3d 321, 324 (9th Cir. 1994), even more recently indicated, "[a]lthough we have never expressly held that the same rule (viz., funds held in trust are property neither of the debtor nor of the bankruptcy estate) should apply as well to situations involving funds held by a debtor in constructive trust, the rule would seem to apply with equal force to both situations." Therefore, since we have recognized that the crux of this appeal is whether the withholding funds fall within section 541(d)'s

exception to "property of the estate," the fact that the trust at issue is constructive rather than express has no bearing on our decision. Accordingly, we find no reason not to analyze the trust in this case in the same manner as Begier analyzed the trust created by 26 U.S.C. § 7501. We hold that because a trust was created under Pennsylvania law when Sharon Steel withheld the income tax, the district court erred when it held that the City of Farrell did not show a trust relationship.

d. Has the city satisfied Begier's "nexus" requirement?

In Begier, after the Court concluded that a trust was created "at the moment" of wage payment, it analyzed whether "the particular dollars that . . . [the debtor] paid to the IRS were 'property of the debtor.'" Begier, 496 U.S. at 61, 110 S.Ct. at 2264 (emphasis added). In other words, the Court wrestled with how to determine whether the "assets transferred to the IRS . . . were trust property." Id. at 62, 110 S.Ct. at 2265. This inquiry mirrors the second part of our Goldberg test, i.e. whether the claimant identified and traced the trust funds. See 932 F.2d at 280.

Because the statute creating the trust considered in Begier, section 7501, provided no guidance on this issue, the Court stated that it "might naturally begin with the common-law rules that have been created to answer such questions about other varieties of trusts." 496 U.S. at 61, 110 S.Ct. at 2265. The Court, however, concluded that "[c]ommon-law tracing rules . . . are unhelpful in this special context," reasoning that "[u]nlike a common-law trust, in which the settlor sets aside particular

property as the trust res, § 7501 creates a trust in an abstract 'amount'-- a dollar figure not tied to any particular assets -- rather than in the actual dollars withheld."  Id. at 62-63, 110 S.Ct. at 2265 (emphasis added).  As we have concluded that we should analyze the trust in this case as Begier analyzed a section 7501 trust, we find that the common-law tracing rules should not apply to our decision on whether the city has satisfied Begier's nexus requirement.

Were it not for Begier, our task would be more difficult because of the Supreme Court's opinion in United States v. Randall, 401 U.S. 513, 91 S.Ct. 991 (1971).  In Randall, the Court confronted a situation very similar to this appeal.  There, the United States sought, in the bankruptcy proceeding, to satisfy the debtor's pre-petition tax obligations from the debtor's post-petition general assets.  The United States argued that the debtor held an amount representing the tax obligation in trust for the government and that this amount could be traced to the debtor's funds when the petition was filed.  In response, the trustee argued that no trust had been created because the debtor did not segregate any funds for the tax obligation.  The Court did not accept either argument.  Instead, it held that the IRS could not recover the taxes ahead of administrative expenses, reasoning that "the statutory policy of subordinating taxes to costs and expenses of administration would not be served by creating or enforcing trusts which eat up an estate, leaving little or nothing for creditors and court officers whose goods and services created the assets."  Id. at 517, 91 S.Ct. at 994.

Were we to apply Randall on this appeal, we probably would affirm the district court's order on the basis that a taxing authority's trust interest in a debtor's pre-petition tax obligation does not justify granting the authority priority over claims for administrative expenses. Begier, however, held that the "strict rule of Randall . . . did not survive the adoption of the new Bankruptcy Code" section 541. Begier, 496 U.S. at 65, 110 S.Ct. at 2266. The Court's reasons for holding that section 541 displaced the holding in Randall are helpful in shedding light on the nexus requirement.

In reaching its decision, the Begier Court first compared the Senate and House bills that led to the enactment of section 541. Begier stated that the "Senate bill attacked Randall directly, providing in § 541 that trust-fund taxes withheld or collected prior to the filing of the bankruptcy petition were not 'property of the estate.'" Begier, 496 U.S. at 63-64, 110 S.Ct. at 2265 (citing S. Rep. No. 95-1106, at 33 (1978)). As to the House bill, Begier stated that while the "bill did not deal explicitly with the problem of trust fund taxes, . . . the House Report stated that 'property of the estate' would not include property held in trust for another." Begier, 496 U.S. at 64, 110 S.Ct. at 2265-66 (citing H.R. Rep. No. 95-595, at 368 (1977)). Congress's final compromise in enacting the portion of section 541 that deals with post-petition transfers, according to Begier, "explicitly provided that 'in the case of property held in trust, the property of the estate includes the legal title, but not the beneficial interest of the

property.'"  _Begier_, 496 U.S. at 64, 110 S.Ct. at 2266 (citing 124 Cong. Rec. at 32,417 (remarks of Representative Edwards)).

Next, _Begier_ took the unusual step of treating the floor statements of a representative "as persuasive evidence of congressional intent."  _Begier_, 496 U.S. at 64 n.5, 110 S.Ct. at 2266 n.5.  The Court quoted Representative Edwards for the proposition that "the Senate language specifying that withheld or collected trust-fund taxes are not part of the bankruptcy estate was deleted as 'unnecessary since property of the estate does not include the beneficial interest in property held by the debtor as trustee.'"  _Id_. at 64, 110 S.Ct. at 2266 (citing 124 Cong. Rec. at 32,417).

Additionally, _Begier_ placed great weight on Representative Edwards' subsequent discussion of "the effects of the House language on the rule established by _Randall_":

> [A] serious problem exists where 'trust fund
> taxes' withheld from others are held to be
> property of the estate where the withheld amounts
> are commingled with other assets of the debtor.
> The courts should permit the use of reasonable
> assumptions under which the Internal Revenue
> Service, and other tax authorities, can
> demonstrate that amounts of withheld taxes are
> still in the possession of the debtor at the
> commencement of the case.

_Begier_, 496 U.S. at 64, 110 S.Ct. at 2266 (citing 124 Cong. Rec. at 32,417).  From this statement, the Court concluded that "by requiring the IRS to 'demonstrate that amounts withheld are still in possession of the debtor at the commencement of the case' [i.e. at the filing of the petition] . . . , Congress expected that the IRS would have to show _some_ connection between the §

7501 trust and the assets sought to be applied to a debtor's trust-fund tax obligations." Begier, 496 U.S. at 65-66, 110 S.Ct. at 2266 (emphasis added). The Court continued by asking just "how extensive the required nexus must be." Id. (emphasis added). Answering that question, the Court held that in Begier the pre-petition payment to the IRS satisfied the nexus requirement.[8] Id. at 67, 110 S.Ct. at 2267. Thus, as Begier involved a pre-petition payment, while here we have no such

---

[8]. In explaining this "nexus" requirement, Begier stated that the "Bankruptcy Code provides no explicit answer, and Representative Edwards' admonition that courts should 'permit reasonable assumptions' does not add much." Begier, 496 U.S. at 66, 110 S.Ct. at 2266. Accordingly, the Court looked to the following statement from the House Report for guidance:

> 'A payment of withholding taxes constitutes a payment of money held in trust under Internal Revenue Code § 7501(a), and thus will not be a preference because the beneficiary of the trust, the taxing authority, is in a separate class with respect to those taxes, if they have been properly held for payment, as they will have been if the debtor is able to make the payments.'

Id. at 66, 110 S.Ct. at 2267 (quoting H.R. Rep. No. 95-595, at 368 (1977), 1978 U.S.C.C.A.N. at 6324). "In the absence of any suggestion in the Bankruptcy Code about what tracing rules to apply," the Court adopted a literal reading of the above quote. Under this literal reading, the Court held that "any voluntary prepetition payment of trust-fund taxes out of the debtor's assets [satisfies the nexus requirement and therefore] is not a transfer of the debtor's property." Begier, 496 U.S. at 67, 110 S.Ct. at 2267.

This holding does not control the situation before us, because Begier involved a pre-petition payment to the taxing authority, while here we confront the taxing authority's attempt to collect the taxes from the debtor's post-petition general assets. Of course, the holding that an actual pre-petition payment will satisfy the nexus requirement does not mean that the requirement cannot be satisfied in some other way.

payment, we cannot draw a conclusion from Begier as to whether the City of Farrell has met the nexus requirement.

Nevertheless Sharon Steel argues that as "it is undisputed that the [t]axes were not held in a segregated account . . . [or] paid prepetition, . . . the required nexus cannot be established." Brief at 13 (emphasis added). But its argument misconstrues Begier's nexus requirement, because it contemplates that the nexus requirement is met only if the employer had segregated the trust fund taxes or transferred them to the taxing authority before the petition. Yet Begier's reliance on Representative Edwards' remarks shows that the taxing authorities should be able to show that the nexus requirement is satisfied in other ways.[9]

_____

[9]. The bankruptcy court cited In re Kulzer Roofing, Inc., 139 B.R. 132 (Bankr. E.D. Pa. 1992), aff'd 150 B.R. 134 (E.D. Pa. 1992), and In re Russman's, Inc., 125 B.R. 520 (Bankr. E.D. Tenn. 1991), for the proposition that the "City of Farrell cannot establish the required nexus with regard to the commingled funds in [Sharon Steel's] possession." In re Sharon Steel Corp., 152 B.R. at 451-52. Kulzer is readily distinguishable as it did not involve a taxing authority, but involved private parties' attempts to collect funds that were commingled in the debtor's general assets. The bankruptcy court rejected the attempt because the claimants had not established that the funds were held in either an express or a constructive trust. 139 B.R. at 141. Of course, even if Kulzer were not distinguishable we would not be bound to follow it.

Russman, however, though concerning sales taxes, raises trust-fund issues similar to those in this case. Russman held that a state taxing authority had satisfied Begier's nexus requirement with respect to segregated funds but had not satisfied the nexus requirement "with regard to the commingled funds remaining on deposit in the trustee's general operating account." Russman, 125 B.R. at 524. But the court reached its conclusion with respect to the commingled funds without analysis and in these circumstances we do not find the opinion persuasive.

Because the <u>Begier</u> Court relied heavily on
Representative Edwards' remarks when deciding whether the pre-
petition transfer satisfied the nexus requirement, we will give
his remarks similar weight in considering whether the City of
Farrell has satisfied the nexus requirement.  Specifically, as
partially quoted earlier, Representative Edwards stated that:

> Where it is not possible for the Internal
> Revenue Service to demonstrate that the amounts of
> taxes withheld are still in the possession of the
> debtor at the commencement of the case, present
> law generally includes amounts of withheld taxes
> as property of the estate. . . . Nonetheless, a
> serious problem exists where 'trust fund taxes'
> withheld from others are held to be property of
> the estate where the withheld amounts are
> commingled with other assets of the debtor.  The
> Courts should permit the use of reasonable
> assumptions under which the Internal Revenue
> Service, and other taxing authorities, can
> demonstrate that amounts of withheld taxes are
> still in the possession of the debtor at the
> commencement of the case.  For example, where the
> debtor had commingled that amount of withheld
> taxes in his general checking account, it might be
> reasonable to assume that any remaining amounts in
> that account on the commencement of the case are
> withheld taxes.

124 Cong. Rec. at 11,047.  Thus, Representative Edwards spoke
about a situation in which an employer commingles the trust-fund
taxes in its general checking account and subsequently files for
bankruptcy without having paid the taxes to the appropriate
taxing authority.

We, however, face an insurmountable hurdle barring us
from deciding whether the City of Farrell has satisfied the nexus
requirement, because neither the bankruptcy court nor the
district court made findings of fact on which we could predicate

such a determination.  This omission is understandable, since the bankruptcy court and district court believed that the city could not satisfy the nexus requirement as Sharon Steel's funds were commingled and Sharon Steel did not pay the taxes before it filed its Chapter 11 petition.  Nevertheless Representative Edwards' example of what "might" constitute a reasonable assumption could be applicable here.[10]

As we have indicated, Representative Edwards stated that "where the debtor had commingled [the] amount of withheld taxes in his general checking account, it might be reasonable to assume that any remaining amounts in that account on the commencement of the case are withheld taxes."  Sharon Steel concedes that before it filed for bankruptcy, Citibank "controlled all monies coming into Sharon Steel through a lock box account . . . [and] Citibank would authorize disbursement of funds from the [l]ock [b]ox [a]ccount to Sharon Steel's operating

---

[10].  We recognize that allowing courts to consider commingling in deciding whether a sufficient nexus exists runs counter to our holding above that a party should not be able to defeat a trust "simply by commingling the withholding funds with its other assets."  See typescript at 15.  Nonetheless, as the Supreme Court held in Begier, the question of whether a trust exists is analytically distinct from whether or not the trust funds are traceable and identifiable.  The first question involves an inquiry into state law; the second does not.  Therefore, considerations relevant to the first question are not always coextensive with considerations relevant to the second.  To some extent, however, Representative Edwards' comments were intended to make equitable considerations part of the "nexus" inquiry as well.  Thus, when applying the guidelines we set forth to determine whether a nexus exists, the bankruptcy court certainly should keep in mind the broader policy against allowing a party unilaterally to make a trust unenforceable by commingling assets.

accounts."  Brief at 3.  Thus, as Sharon Steel's funds were placed in the lock box account, it would be reasonable to conclude that the withheld funds were held in trust for the City of Farrell in that account.  Moreover, when Sharon Steel filed its Chapter 11 petition the lock box account may have contained an amount of funds exceeding the remaining withholding held in trust for the City.  If so, we have the exact set of facts that Representative Edwards contemplated:  i.e. pre-petition trust-fund taxes commingled in the debtor's general checking account.[11]

Because it is manifest that we do not know sufficient facts to determine whether the City of Farrell has met the nexus requirement, we will remand the case to the district court which in turn will remand it to the bankruptcy court for appropriate fact finding.  The district court and the bankruptcy court should be cognizant of the factual findings necessary to apply the "lowest intermediate balance test" ("LIBT").  The LIBT is a judicial construct that some federal courts have applied to ease a beneficiary's tracing burden when "a trustee commingles trust funds with other monies in a single account."  In re Columbia Gas, 997 F.2d at 1063.  The LIBT "allows trust beneficiaries to assume that trust funds are withdrawn last from a commingled

_____

[11].  We reject any argument that because the City of Farrell is not the IRS, it should not receive the benefits of Representative Edwards' remarks.  He specifically stated that "[t]he Courts should permit the use of reasonable assumptions under which the Internal Revenue Service, and other taxing authorities, can demonstrate that amounts of withheld taxes are still in the possession of the debtor at the commencement of the case."  Thus, we cannot limit the application of his statement to the IRS.

account.  Once trust money is removed, however, it is not replenished by subsequent deposits.  Therefore, the lowest intermediate balance in a commingled account represents trust funds that have never been dissipated and which are reasonably identifiable."  Id.

At this time we do not decide definitively that the district court and the bankruptcy court must apply the LIBT as the parties have not briefed the issue and neither the bankruptcy court nor the district court addressed the applicability of the LIBT.  But, as we recognize that the LIBT may constitute a "reasonable assumption[] under which the Internal Revenue Service, and other taxing authorities, can demonstrate that amounts of withheld taxes are still in the possession of the debtor at the commencement of the case[,]" we will instruct that on remand, the bankruptcy court make factual findings sufficient to support a conclusion as to whether the city may recover if, as a matter of law, the LIBT is applied.

Sharon Steel also contends that the city did not request discovery and relied exclusively on Begier in the bankruptcy court.  Thus, in Sharon Steel's view, the city has waived its rights to discovery and we therefore should not remand for additional fact-finding.  Brief at 8-9.  The city responds that the procedural posture of the case in the bankruptcy court precluded it from obtaining discovery.  We need not linger on this point as Sharon Steel's argument necessarily is predicated on its contention that we must apply a clearly erroneous standard of review to the bankruptcy court's finding that "[t]he City of

Farrell cannot establish the required nexus with regard to the commingled funds in [Sharon Steel's] possession."  Brief at 10. The bankruptcy court made this finding on the basis of its correct observation that "there is no allegation that there exists a segregated trust fund and the amount in question has not been paid."  In re Sharon Steel Corp., 152 B.R. at 451.  In view of those legal conclusions drawn from undisputed facts it would have been pointless for the city to request discovery as the discovery would not have been directed to the issues which the bankruptcy court thought were outcome determinative as a matter of law.  Rather, discovery could be germane only to determine the status of funds that Sharon Steel had neither segregated nor paid before filing its Chapter 11 petition.  Accordingly, in light of our legal conclusion that the bankruptcy court misstated the law, it is only fair that the parties have an opportunity to develop the facts relating to the broader method of satisfying the nexus requirement which we recognize.  Consequently, we reject Sharon Steel's argument that we should not remand for additional factual findings.

We deal with one final point.  Citibank, as agent for certain lenders, asserts that "the only source of funds available to pay the taxes is the Cash Collateral Account which secures [Sharon Steel's] obligations to the Lenders under" a prepetition credit agreement on which the lenders have a prior lien. Therefore in its view the taxes cannot be paid without the lenders' consent.  It concludes the taxes cannot be paid at all as the lenders do not consent.  Brief at 10-11.  Neither the

district court nor the bankruptcy court considered this issue and the parties have not briefed it on this appeal, though Citibank has mentioned the point in a conclusory fashion. Furthermore, the record is not clear as to exactly how Citibank and Sharon Steel treated Sharon Steel's funds. In these circumstances we are satisfied that we should not address Citibank's argument but we reach our result without prejudice to Citibank's position on this point which it may advance on the remand.

In sum, therefore, we will reverse the district court's order of February 14, 1994, and will remand the case to the district court for proceedings consistent with this opinion. Specifically, on further remand, the bankruptcy court should make factual findings about Sharon Steel's payment of wages and the withholding, i.e. the accounts in which the withholding was placed, the deposit and withdrawal history of those accounts, and the amounts remaining in those accounts at the time Sharon Steel filed its bankruptcy petition. Furthermore, Citibank may assert that the lenders which it represents have a lien on the funds from which the city seeks payment.