In re Tameca D. MARVE, Debtor.

No. 12–20611 JPK.

United States Bankruptcy Court,
N.D. Indiana,
Hammond Division.

Jan. 4, 2013.

736

Rosalind G. Parr, Merrillville, IN, for Debtor.

J. PHILIP KLINGEBERGER,
Bankruptcy Judge.

This Chapter 7 case was initiated by voluntary petition filed by the debtor Temeca D. Marve ("Marve") on March 1, 2012. On June 26, 2012, Stacia L. Yoon, as Trustee of the Chapter 7 bankruptcy estate of Temeca D. Marve ("Trustee") filed a motion for turnover [record # 17]. On July 12, 2012, as record # 25, Marve, by counsel, filed an objection to the motion for turnover. On July 13, 2012, as record # 26, Marve filed an amended Schedule C. The motion for turnover filed by the Trustee requested turnover of $3,819.44 of funds in the debtor's two bank accounts. Marve's objection to the motion for turnover in part asserted that a portion of the funds in her joint checking account at Chase Bank ending with the numbers 985 was derived from a federal income tax refund of $8,236.46, $5,291.00 of which constituted an earned income credit. The amended Schedule C claimed an exemption of $5,291.00 in the earned income credit [1].

The matter before the court primarily relates to the Trustee's motion for turnover with respect to funds in the Chase

1. Based upon the Trustee's motion for turnover, Marve's objection, and the parties' stipulation of facts filed on November 9.2012—a portion of the funds subject to the Trustee's motion do not appear to be in dispute. Paragraph 10 of the debtor's objection states that on the date of filing of her bankruptcy petition, there was a balance of $613.91 in a Chase Bank account ending with the numbers 580. Paragraph 10 of the objection asserts the debtor "is claiming $330.00 of that amount as exempt". However, the original Schedule C filed shortly after the inception of the case asserted only an exemption of $100.00 for a joint checking account at Chase

Bank; this exemption assertion was mirrored in the amended Schedule C. Paragraph 10 of the of the stipulation of facts establishes that the "580" account is the *debtor's savings account*. The court determines that the $100.00 exemption claim relates to the Chase Bank account ending with numbers 985, and that no exemption has been claimed with respect the "580" account. Thus, no sustainable objection has been lodged to the turnover request for $613.91 in the debtor's Chase Bank account ending with the numbers 580. The Trustee's motion for turnover will therefore be sustained for $613.91 with respect to this account.

Bank account ending with the number 985. The matter before the court is a contested matter pursuant to Fed.R.Bankr.P. 9014. The court determines that it has full jurisdiction and authority to render a final decision with respect to this contested matter.

At conferences held with the court, the court and the parties discussed that the primary issue was determining whether an earned income credit retained its exempt nature provided by Indiana law after its receipt by the taxpayer/debtor and deposit into a bank account. The court entered an order (record # 32) reflecting this approach to the case. The parties did not timely file the stipulation of facts required by that order, and as a result, on November 9, 2012, a hearing was held to determine the course of further proceedings in the case, attended both by Trustee Yoon and by attorney Rosalind Parr, as counsel for Marve. The parties had filed a stipulation of facts on November 9, 2012, which the court addressed at that hearing. As a result of that hearing, the court entered an order which determined that there were now two issues necessary for decision: First, whether the Indiana exemption statute concerning the earned income credit continues to protect the amount of the credit *after* it is received by the debtor/taxpayer; second, if the foregoing issue were determined in the affirmative, the principles to be employed to determine the amount actually subject to exemption when the earned income credit amount is comingled in a bank account with non-exempt funds.

■ The first issue—whether an earned income credit retains its exempt character after it is received by a debtor/taxpayer/recipient of the earned income credit— is very easily resolved. The earned income credit exemption is provided by I.C. 34–55–10–2(c)(11) as follows:

(c) the following property of a debtor domiciled in Indiana is exempt:

(11) The debtor's interest in a refund or a credit received or to be received under the following:

(A) Section 32 of the Internal Revenue Code of 1986 (the federal earned income tax credit),

(B) IC 6–3.1–21–6 (the Indiana earned income tax credit)

This court has issued a number of decisions, some of which have been published by bankruptcy decision publication services, and some of which have not been so published. It is difficult sometimes to keep track of the issues which the court has previously determined. This is one of them. As record # 30 in the case of Shashunte Jameca Norwood, Case No. 08–20259, the court determined that the exemption provided by the foregoing statute extends to the earned income credit after it is received by the debtor/recipient, and after it is deposited into a bank account. A copy of that memorandum of decision is attached to this document and is incorporated herein as the court's determination concerning the foregoing issue. Due to the manner in which the record was made in Norwood, the court did not determine the second issue, i.e., the manner in which the exempt amount would be determined with respect to earned income credit funds deposited in a bank account which were comingled with non-exempt funds. It is the second issue which will be determined by this Memorandum of Decision.

■ The court's research has disclosed three mechanisms for determining the amount of exempt funds existing on the date of the filing of a bankruptcy petition when prior to that date exempt funds have been co-mingled with non-exempt funds.

The first of these is the "Lowest Intermediate Balance Test", explained as fol-

lows in *In re Ross*, 2012 WL 3817792 (Bankr.S.D.Ind.2012):

> The Debtors next urge the Court to trace the Disputed Funds by using the "Lowest Intermediate Balance Test" ("LIBT") which they assert will result in all of the Disputed Funds being traced to the EIC Funds, and thus, exempt. The LIBT has been applied most frequently where a debtor commingles his own funds with funds he is holding in trust for another. For example, if the account balance is equal to or exceeds the amount of funds held in trust, then the full amount of the trust funds remain intact. If the account balance drops to zero, the trust funds are lost and subsequent deposits into the account are considered non-trust funds and do not replenish the trust fund portion. If the account drops to a balance less than the amount of trust funds, but not to zero, the trust funds are limited to the lowest intermediate balance in the account. Thus, the LIBT is based on the fiction that the debtor would withdraw the non-trust funds first, retaining as much as possible of the trust funds in the account. See, *Connecticut Genera [General] Life Ins. Co. v. Universal Ins. Co.*, 838 F.2d 612, 619 (1st Cir.1988); *In re MJK Clearing, Inc.*, 371 F.3d 397, 401–402 (8th Cir.2004); *In re Appalachian Oil Co., Inc.*, 471 B.R. 199 (Bankr. E.D.Tenn.2012). Courts use the LIBT to separate out funds held in trust for another from the debtor's funds which are property of the debtor's bankruptcy estate or where a creditor attempts to impress a constructive trust upon proceeds in the account. See, *U.S. v. McConnell*, 258 B.R. 869 (N.D.Tex.2001) (chapter 7 debtor had commingled immigration inspection fees which it held in trust for the Immigration and Naturalization Service); *In re Stoler [Stotler] & Co.*, 144 B.R. 385 (N.D.Ill.1992) (broker sought constructive trust over funds held by bankruptcy trustee for unpaid commissions); *In re LGI Energy Solutions, Inc.*, 460 B.R. 720 (8th Cir. BAP 2011) and *In re Appalachian Oil Co., Inc.*, 471 B.R. 199 (Bankr.E.D.Tenn. 2012) (in both cases, defendant in preference action asserted constructive trust as defense and argued that transfer was of property held in trust and not of property of the estate).

The second approach is that actually adopted in *In re Ross*, stated as follows in that decision:

> This Court is of the opinion that the LIBT appropriately may be applied to determine *what is property of the bankruptcy estate* in two circumstances: (1) where the debtor has commingled his own funds with funds he holds for another in trust, or (2) where, in a case that converts from a chapter 13 to a chapter 7, the debtor has commingled funds acquired pre petition with funds acquired post petition but pre conversion. Neither of those circumstances is present here. Furthermore, the funds in the PNC Account were fungible ... certainly the EIC Funds within that account were not specially "marked" to physically distinguish them from the non exempt funds. Thus, this Court sees no logic in assuming that the Debtors first spent the non exempt funds in the PNC Account such that only the EIC Funds were deposited into the Huntington Account, or vice versa. Furthermore, unlike *Maine*, there is not one, but two bank accounts involved here and the balances in both dropped below the amount of the EIC Funds. Rather than using the LIBT, the fairer way to determine the exempt portion of the Disputed Funds is determine the percentage of the EIC Funds to the PNC Account total and to apply that percentage to the

Disputed Funds. The parties stipulated that, as of March 16, 2012 and prior to the withdrawal of $9,300, the PNC Account balance was $10,575.88, of which $6104, or 57.72%, was made up of the EIC Funds. Applying this percentage to the Disputed Funds results in $1,296.68 (57.72% of $2,246.50) in exempt EIC Funds and $949.82 in non-exempt funds.

*Ross, supra.*[2]

The third approach is the "first-in, first-out method", explained in *In re Patterson,* 2010 WL 3606893 (Bankr.N.D.Ohio 2010) as follows:

In determining the nature of the funds on deposit in Debtors' checking account at the time their bankruptcy petition was filed, the court finds use of the first-in, first out method of accounting appropriate to trace the source of the funds in the account. *See In re Lichtenberger,* 337 B.R. 322, 326 (Bankr.C.D.Ill.2006) ("[g]uided by the principle that exemptions are to be construed liberally in favor of debtors," the court applied the first-in, first-out method to determine the source of funds in the debtor's bank account); [*NCNB Financial Services, Inc. v.*] *Shumate,* 829 F.Supp. [178] at 181 [ (W.D.Va.1993) ] (using the first-in, first-out method in determining whether funds could be traced to social security benefits); *United States v. Griffith,* 584 F.3d 1004, 1021 (10th Cir.2009) (finding VA funds commingled in account with other funds will retain their VA character as long as they are readily traceable and may be accounted for with a standard accounting method, such as first-in, first-out tracing). Immediately before the deposit, the balance in Debtors' checking account was $362.23. After the income tax refund was deposited the balance was $5,267.23. However, before the date of filing, withdrawals were made from the account in the total amount of $1,512.13, leaving a balance of $3,755.10 at the time of filing. Applying the first-in, first-out method, this entire balance consists of payments received under the provisions of the Internal Revenue Code for the earned income credit and additional child tax credit. Debtors are, therefore, entitled to exempt the entire balance of funds in their checking account on the date of filing.

None of the foregoing methods is, or can be, a precise analytical model for the manner in which all people utilize bank accounts and intend the use of those accounts to reflect either extension of, or evisceration of, protections afforded by exemption laws with respect to exempt funds deposited in accounts which are co-mingled with non-exempt funds. If one were to implement sound pre-bankruptcy planning in relation to the issue of utilization of exempt funds, or deposit of exempt funds into a bank account, it would be a relatively easy matter to segregate the exempt funds into a separate account so that they could be entirely traced to that account and their use totally accounted for. That would be a perfect world of pre-bankruptcy planning, a world which—let's face it—does not exist. What we usually end up with is a circumstance in which a tax re-

---

**2.** The court has been unable to locate any case decided by an Indiana appellate court with respect to the tracing rules to be applied in this matter, i.e., in relation to deposits into a bank account derived from exempt funds co-mingled with non-exempt funds. However, several cases which applied in essence the LIBT approach arose in situations in which a person had co-mingled his/her own funds with funds held in trust for another, as addressed by Judge Metz. The court agrees with Judge Metz that the LIBT approach is not appropriate, given Indiana law which implicitly limits its application to the foregoing circumstance.

fund, including an earned income credit, is viewed as a source of payment/use for ordinary and extraordinary expenses made by the debtor/taxpayer/EIC recipient, without any thought being given as to identification of the source of any payment made from a bank account to a particular source of deposit. In this scenario, Judge Metz's approach really doesn't mirror a debtor's actual use of co-mingled funds: there is no provable intent by an account owner to use co-mingled funds proportionately. But ... while the earn income credit is treated by the Internal Revenue Code essentially as a tax refund, and many reported decisions designate the earned income credit as a "tax refund", it is actually not usually a tax refund in the real sense of that term. A true tax refund reflects a return of taxes paid by the tax refund recipient in excess of the amount of tax actually owed by that recipient. The earned income credit has little, or no, originating base in the payment of taxes. It is essentially a form of social welfare payment designed to provide a minimal amount of support to persons entitled to it so that those persons can be assisted in providing for very base necessities of life for them, their dependents, or other household members. The earned income credit, at least to some extent, alleviates the need for other social welfare payments to be made by the federal government, state and local governments, or charitable organizations. In other words, at its recipient level, it is the ultimate "trickle down" social welfare disbursement. It is based upon an assumption that without its disbursement, truly needy people would be even more truly needy; truly destitute people would be more truly destitute; and people who have difficulty making ends meet would have a further gap between the ends to be met. The earned income credit is entirely exempt, and but for its deposit into a "co-mingled" bank account, no creditor could

reach it, and no bankruptcy Trustee could reach it to disburse it as property of the bankruptcy estate. Given the foregoing, perhaps the underlying premise of the earned income credit argues in favor of the LIBT approach, so that the maximum amount of the credit is preserved for the debtor.

■ Be the foregoing as may be, in this court's view legal theories should not be the result of gerrymandering to carve out islands of preferential treatment which do not mirror actual circumstances. The LIBT approach does not reflect actual practices concerning deposited funds and their disbursement. The LIBT method, applied in the context of exempt funds as contrasted to the context of fiduciary-held funds, gives the debtor "credit" for planning fund uses which did not in fact exist. The LIBT method was derived to provide as much protection as possible for funds held in trust for another, to protect the actual owner of those funds—not to protect funds owned by the owner of the account into which those funds had been deposited. In actuality—as Judge Metz noted—deposits into an account are fungible, i.e., they are not deposited with an encapsulation as to the source of deposit. Ordinarily, depositor-owned funds are deposited into a bank account without thought as to their origin—to provide a convenient reservoir for funds, or to immediately provide a source of funds for immediate disbursement needs. They are deposited in the same manner that coal is loaded into a tipple for withdrawal to load coal cars: the first lump in, is the first lump out. In the court's view, the "first in, first out" mechanism mirrors reality. Depending upon the circumstances of deposit and withdrawal, at times this approach will preserve EIN funds, while at times it won't. However that may be, the court does not deem it appropriate to

adopt a theory which results in the settling of exempt funds at the bottom of the tipple, or the proportionate mixing of exempt funds before funds reach the point of delivery. There is always a tension in cases involving co-mingled funds in any context—a tension between who is ultimately entitled to portions of the fund at issue. In the context of this case, the tension is between the debtor claiming exemption, and creditors of the debtor who stand to benefit if funds are not determined to be exempt. While it is true that exemptions are to be literally construed in favor of the debtor, in this court's view that principle ceases to be operative when exempt funds are co-mingled with non-exempt funds. At that point the actual use of co-mingled funds—i.e., the manner in which people use fungible deposits into a bank account—controls. The LIBT method and the proportional use method create an encapsulation of exempt funds which does not in fact exist as the account owner's intent, and continue the preference for exemption construction beyond its boundary.

The court adopts the "first in, first out" approach.

In order to apply the "first-in, first-out" method, the *initial fact* which must be established is the balance in the account in question *immediately preceding* the deposit of the earned income credit into that account. That fact is missing from the Stipulation of Facts filed by the Trustee and Marve as record # 38. The calculation is also complicated by the fact that the account at issue was a joint account with the debtor's non-debtor husband whose interest in the account is severable from the bankruptcy estate's interest in the account, and by the fact that deposit(s) of the husband's sole property was/were made into the account after deposit of the debtor's earned income credit into that account. Absent additional facts, a final determina-

tion as to the amount subject to turnover to the Trustee cannot be made.

The Trustee is entitled to turnover of $613.91 with respect to the Chase Bank account ending with numbers 580. The amount of the account ending with numbers 985 subject to turnover remains to be determined.

Because of missing facts, this memorandum of decision does not finally determine the contested matter arising from the Trustee's motion for turnover and Marve's objection to that motion. However, as to the legal issues before the court, the court determines as follows:

A. As determined by its decision in *In re Norwood* (attached), the Indiana exemption statute continues to provide exemption for the earned income credit after that credit amount has been received by a debtor/taxpayer/recipient, including with respect to deposit of the earned income credit into a bank account with non-exempt funds.

B. The "first-in, first-out" method is the method which the court will employ to determine the extent to which funds in a co-mingled bank account constitute funds subject to exemption with respect to the earned income credit.

IT IS ORDERED that a hearing will be held on **January 18, 2013, at 9:00 A.M.** to determine the extent of the evidentiary record necessary to finally determine the issues in this contested matter.